**ST. PAUL FIRE AND MARINE INS. CO., Plaintiff–Appellant,**

**v.**

**CASSENS TRANSPORT CO., et al., Defendants–Appellees.**

**No. 02–3970.**

United States Court of Appeals, Sixth Circuit.

Jan. 26, 2004.

Kenneth E. Harris, John Patrick Mazza, Harris, Turano & Mazza, Columbus, OH, for Plaintiff–Appellant.

William E. Pfau, III, Pfau, Pfau & Marando, Youngstown, OH, Defendants–Appellees.

Before ROGERS and COOK, Circuit Judges, and COHN, District Judge.*

* The Honorable Avern Cohn. United States District Judge for the Eastern District of Michigan, sitting by designation.

COHN, District Judge.

This is an insurance case involving a fatal car accident on the Ohio turnpike. The deceased, Brenda Wyman. was insured by plaintiff-appellant St. Paul Fire Insurance Co. ("St.Paul") through her employer. St. Paul paid two million dollars to her estate as underinsured motorist benefits. St. Paul then sued defendants-appellees Cassens Transport Co. and Jerry Lynn Turner (collectively, "Cassens") seeking contribution. The district court granted Cassens' motion to dismiss on the grounds that Ohio law does not provide for a right of contribution under the circumstances. St. Paul appeals and seeks certification of two questions to the Ohio Supreme Court. For the reasons that follow, we affirm the decision of the district court and decline to certify the questions to the Ohio Supreme Court.

## I. BACKGROUND

On January 17, 2000, Wyman was involved in a fatal car accident on the Ohio Turnpike. She was driving eastbound on the turnpike when she was struck from behind by a car driven by Samuel Searcy. The impact caused Wyman's vehicle to crash into a tractor-trailer illegally parked on the shoulder. The tractor-trailer was owned by Cassens and had been parked there by its employee, Jerry Lynn Turner. The combined collisions resulted in Wyman's death.

Searcy was insured by State Farm. State Farm paid Wyman's estate ten thousand dollars ($10,000.00), the full policy limit. At the time of the accident, Wyman was covered by St. Paul, through her employment at Salem Community Hospital, for up to ten million dollars ($10,000,000.00) in commercial automobile liability with uninsured and underinsured coverage. Wyman's estate submitted a claim for underinsured benefits to St. Paul.

St. Paul eventually settled with Wyman's estate for two million dollars ($2,000,000.00). Wyman's estate released St. Paul. Searcy. Cassens, and Turner of liability.

According to St. Paul's complaint, the probate court did not approve the settlement until September 19, 2001. In its brief, however, St. Paul says that the settlement was not finally approved until October 1, 2001.

St. Paul then sued Cassens for contribution, claiming that Turner, as an employee of Cassens, was negligent *per se* for violating Ohio law by parking on the shoulder without an emergency and under *respondeat superior*, Cassens is deemed negligent.

Cassens filed a motion to dismiss on the grounds that St. Paul's claim is merely a subrogation claim masquerading as a contribution claim and that a claim for subrogation is time barred. Cassens also argued that even if a claim was timely. St. Paul failed to state a claim because it was not a joint tortfeasor and neither its insured (Salem Community Hospital) nor its insured employee (Wyman) was a joint tortfeasor.

The district court found that although a subrogation claim would be time barred. St. Paul was asserting a contribution claim. The district court concluded that under Ohio's statutory and case law, the right of contribution exists only among joint tortfeasors and since St. Paul was not a tortfeasor, it had no claim for contribution.

## II. ANALYSIS

This Court reviews a district court's dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) *de novo* and must "construe the complaint in the light most favorable to the plaintiff ... and determine whether the

plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir.1998) (citation omitted). *See Montgomery v. Huntington Bank and Silver Shadow Recovery, Inc.,* 346 F.3d 693, 697–98 (6th Cir.2003).

The parties agree that Ohio law controls the issues on appeal. The Ohio uninsured/underinsured motorist statutes provide in relevant part:

> In the event of a payment to any person under the coverages offered under this section and subject to the terms and conditions of such coverages, the insurer making payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made, including any amount recoverable from an insurer which is or becomes the subject of insolvency proceedings, through such proceedings or in any other lawful manner.

Ohio Rev, Code § 3937.18(E). Thus, an insurer providing uninsured or underinsured motorist benefits is entitled to recover the proceeds of any judgment obtained by its insured as a result of injury or death to the extent it has paid benefits to the insured.

Ohio law also provides for recovery among tortfeasors:

> [I]f two or more persons are jointly and severally liable in tort for the same injury or loss of person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfea-

sor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share. No tortfeasor is compelled to make contribution beyond that tortfeasor's own proportionate share of the common liability.

Ohio Rev.Code § 2307.31(A).

With respect to a liability insurer and contribution:

> A liability insurer that by payment has discharged in full or in part of the liability of a tortfeasor and has thereby discharged in full its obligation as insurer is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's proportionate share of the common liability. This division does not limit or impair any right of subrogation arising from any other relationship.

Ohio Rev.Code § 2307.31(C).

The district court examined these statutes and concluded that an insurer who makes a *contribution* claim must have paid benefits on behalf of a tortfeasor because the contribution statutes allow only a tortfeasor to make a claim for contribution to the extent that the tortfeasor has paid more than its share of liability. We agree. Because St. Paul is not a tortfeasor, and neither are its insureds. Salem Community Hospital or Wyman, it does not have a claim for contribution against Cassens and Turner. Ohio Rev.Code § 2307.31(A) and (C) clearly speak in terms of a *tortfeasor's* right of contribution. As to a liability insurer, like St. Paul, it has a right of contribution only where it has paid out on the liability of a tortfeasor.

In addition to the statute, the district court found support for its conclusion in case law, cases that the parties again cite on appeal. In *Essad v. Cincinnati Cas. Co.,* No. 00CA201, 2002 WL 924441, 2002 WL 924439 (Ohio Ct.App. Apr. 16, 2002)

(unpublished), a motorist and passenger who were injured in a car accident filed a declaratory judgment action against their insurer seeking uninsured motorist benefits. The insurer brought a third party claim against the other motorist involved in the accident and the motorist's employer seeking a declaration of its rights against them, asserting rights of subrogation, indemnity, and contribution. The district court dismissed the insurer's third party claim, finding that the insured has not stated a claim for subrogation, indemnity or contribution. The Ohio court of appeals affirmed the dismissal of the contribution claim, stating that "contribution is only available between tortfeasors." *Id.* at *2 (citing Ohio Rev.Code § 2301.31–34).

Likewise, in *Westfield Ins. Co. v. Jeep*, 55 Ohio App.3d 109, 562 N.E.2d 912 (1988), the insurer sued Jeep for contribution as a result of having paid underinsured motorist benefits to its insured, a passenger in a car which went out of control and crashed. In the complaint, the insurer alleged that the car involved in the accident was negligently manufactured by Jeep. The court of appeals held that the insurer lacked standing to pursue a contribution claim against Jeep. The court of appeals noted that the applicable statute, Ohio Rev.Code § 2301.31, allows a right of contribution among tortfeasors, which the insurer was not. The court of appeals also noted that the insurer was "merely satisfying a contractual obligation to [its insured by paying uninsured motorist benefits] and not releasing any obligation to any tortfeasor." *Id.* at 913. Thus, the insurer's liability lay in contract, not in tort.

In *United Ohio Ins. Co. v. Faulds*, 118 Ohio App.3d 351, 692 N.E.2d 1059 (1997), the insurer brought a negligence claim against a fully insured motorist to recover the uninsured motorist benefits paid to its insureds from an accident involving the motorist and uninsured motorists, basing its claim on subrogation as well as a purported assignment of rights from its insured. The court of appeals held that the insurer could not bring an independent negligence claim based on subrogation. The court of appeals also noted that the insurer's claim was really one seeking contribution from a joint tortfeasor, and based on *Westfield*, such a claim was not allowed. The court of appeals, however, indicated that the insurer could recoup the monies it paid by joining the insureds in the personal injury action.

In *Cincinnati Ins. Co. v. Keneco Distrib., Inc.*, No. WD–99–020, 1999 WL 1048236 (1999) (unpublished), the insurer sued the defendant claiming that the defendant caused the accident which injured its insured by placing advertising signs in the highway which obstructed its insured's vision. The insurer sought to recover the monies it paid to its insured as uninsured motorist benefits. The court of appeals held, following *Faulds*, that an insurer cannot bring a claim to recoup uninsured benefits on the basis of subrogation without joining the insured. The court of appeals also noted that the insurer had no contribution claim since it only fulfilled a contractual duty to its insured, and did not release any tortfeasor when its paid uninsured benefits to them.

Finally, in *State Farm v. Trumpy*, No. OT–00–029, 2000 WL 1878951 (Ohio Ct. App. Dec. 29, 2000) (unpublished), the court of appeals noted that *Faulds* and *Keneco* define a "narrow exception to the rule that a personal injury insurer who pays an insured's claim has a subrogated right to recover against a tortfeasor" and again stated that "an insurer obtains no independent claim for *contribution* from an insured *joint* tortfeasor." *Id.* at *1 (emphasis in original).

These cases demonstrate that in Ohio an insurer who pays uninsured or underin-

sured motorist benefits to its insured cannot bring a contribution claim against an alleged tortfeasor. While *Keneco* and *Faulds* appear to allow for an insurer to recover, these cases make clear that an insurer must do so by joining its insured or proceeding under a subrogation theory. And as the district court pointed out, St. Paul could not bring either type of action because it did not join its insureds (Salem Community Hospital and Wyman's estate) nor could it because Wyman's estate released Cassens and Turner from liability. The district court explained: "[h]ad St. Paul obtained an assignment of subrogation rights ... rather than a release of Cassens and Turner, *and* filed an action (in only its name) within the appropriate statute of limitations, presumably St. Paul would have preserved its rights of subrogation against [Cassens and Turner]."

St. Paul seems to recognize as much because its arguments on appeal focus on what it perceives to be an inherent problem with Ohio law and an insurer's right to recover from third parties the amount of uninsured/underinsured motorist benefits paid to an insured. The problem, however, is not with Ohio law, but with the circumstances of the case which have apparently left St. Paul without a remedy. St. Paul says that it could not bring a subrogation claim against Cassens or Turner within the applicable statute of limitations (two years—based on a personal injury action) because the settlement agreement, although reached within the limitations period, could not be finalized until the state probate court approved it, which it says did not happen until after the statute expired. Even if this is the case, this fact alone cannot support a basis for allowing St. Paul to proceed on a contribution claim where the statutory and case law of Ohio clearly do not permit such a claim.

St. Paul urges us to look to case law from other states which have allowed a contribution claim based on the reasoning that the insurer actually "stands in the shoes" of the uninsured/underinsured motorist (Searcy) and therefore is itself a joint tortfeasor. While other states might have allowed St. Paul to recover, it is Ohio law that controls this case and Ohio law is clear—no contribution claim is allowed.

As to St. Paul's motion for certification, St. Paul asks us to certify two allegedly unresolved questions of state law to the Ohio Supreme Court: (1) "[W]hether an uninsured/underinsured motor insurance carrier should be bound by the statute of limitations applicable to the insured's potential, underlying cause of action;" and (2) "[W]hether an underinsured motorist insurance carrier which pays more than the proportionate share to extinguish the liability of a tortfeasor has a cause of action in contribution against another tortfeasor who has not contributed to a settlement but whose liability to the insured has been extinguished?" The first question relates to a subrogation claim—which St. Paul admittedly did not bring. We have addressed the second question in finding that no claim of contribution exists. We see no need to certify these two questions. We also note that St. Paul filed its complaint for contribution in federal court, without claiming that Ohio law was unsettled, and its request for certification came only after losing in the district court.

## III. CONCLUSION

For the reasons stated above, the decision of the district court is AFFIRMED and St. Paul's motion to certify is DENIED.